[No. 26662.   *En Banc.*   May 27, 1937.]

THE STATE OF WASHINGTON, on *the Relation of G. W.
Hamilton, Attorney General, Appellant,* v. SMITH
TROY, *as Prosecuting Attorney for Thurston
County, Respondent.*[1]

*The Attorney General* and *R. G. Sharpe, Assistant,*
for appellant.

*Smith Troy, John S. Lynch, Jr.,* and *E. A. Philbrick,*
for respondent.

ROBINSON, J.—At its recent session, the legislature
passed an emergency act which became effective on
March 13, 1937, as chapter 100, Laws of 1937, p. 406.
The first three sections of the act are as follows:

"Section 1.   The official title of the office of Prose-
cuting Attorney, and/or County Attorney, shall here-
after be known and designated as District Attorney,

[1]Reported in 68 P. (2d) 413.

and the office of Prosecuting Attorney and/or County Attorney shall hereafter be known and designated as the office of District Attorney.

"Sec. 2. The District Attorneys of all counties shall have and exercise all such powers, duties and privileges within their respective counties as are by law now and hereafter conferred upon them as Prosecuting Attorneys and/or County Attorneys.

"Sec. 3. Wherever the words 'Prosecuting Attorney' and/or 'County Attorney' are or have been used in the laws of the State of Washington, the same shall be construed to mean District Attorney."

On March 31, the state of Washington, on the relation of its attorney general, began a special proceeding in the superior court of Thurston County against the prosecuting attorney of that county, as respondent, in which it applied for a peremptory writ of prohibition restraining and prohibiting the respondent from making, issuing or serving informations in any criminal action wherein the title of his office, either in the body, signature or verification, should be designated as "district attorney" of Thurston county, Washington, or by any designation other than "prosecuting attorney" of Thurston county.

The affidavit accompanying the application averred that respondent had, since March 13, 1937, designated his office as "district attorney" of Thurston county in various criminal informations; that he had refused to discontinue the practice upon the relator's request; that, unless prohibited, he would continue it; that, by so doing, he would impede the enforcement of the criminal laws and render attempts to prosecute criminals for offenses committed in Thurston county abortive and that the relator had no plain, speedy, and adequate remedy in the ordinary course of law. The respondent demurred, on the grounds that there was a defect of parties defendant, no jurisdiction of the

subject-matter, and that the application and affidavit did not state facts sufficient to constitute a cause of action or entitle the relator to the relief prayed for. After hearing argument on the demurrer, the trial court entered an order sustaining it, and in the same order, reciting that the relator refused to plead further, dismissed the action. From that order, this appeal was taken.

Section 5 of Art. 11 of our state constitution provides, in part, as follows:

"The legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys and other county, township or precinct and district officers, as public convenience may require, and shall prescribe their duties and fix their term of office. . . ."

This language is repeated in the twelfth amendment to the constitution, adopted by the vote of the people in November, 1924.

The relator brought this proceeding by virtue of Rem. Rev. Stat., § 116 [P. C. § 1786], which gives the attorney general supervisory control and direction over the prosecuting attorneys of the various counties. The relator, as appellant here, contends that the effect of the first three sections of chapter 100, Laws of 1937, p. 406, is to amend the constitution, and that the constitution cannot lawfully be amended by the legislature acting alone, but only upon legislative proposal, confirmed by the vote of the people.

The respondent points out that the name "prosecuting attorney" is misleading, in that a great and very important part of the duties of the office so designated are civil in their nature, such as representing the county and the school districts therein in civil suits and the giving of legal advice and counsel to county and school district officers.

It is further contended that the legislation complained of affects no vested right or interest, that it can harm no one, and it is argued, with much force and especial emphasis, that it in no way defeats the constitutional purpose and intent, in that it does not in any way alter or change the character or duties of the office, but merely changes its name. This argument, it will be observed, is based upon the plausible and appealing logic which has made the words, "What's in a name? That which we call a rose by any other name would smell as sweet," one of the most familiar quotations in our language.

It is further argued that there is no express or implied negation or prohibition in any section, article or amendment of the state constitution which would prevent the change, and we are reminded that the presumptions are all in favor of the constitutionality of the act, and it is said nothing less than a certain and unequivocal violation of some constitutional inhibition can warrant us in holding it inoperative.

The matter before us appears trifling at first sight, and is, in fact, of slight importance, in so far as direct consequences are concerned. But, as suggested by the relator, if the legislature has the power to change the name of one constitutional office, it has the power to change the name of any and all. The matter would appear of greater consequence if, for example, instead of the act under consideration, we had before us an act changing the title of governor to dictator or czar. But, wholly aside from these practical considerations, there is a principle involved of first importance. There is a constitutional inhibition, and, although it arises by implication, it is fully as compelling as it would be if directly expressed.

With all deference to the opinion of the trial court, we cannot escape the conclusion that the relator ap-

pellant is correct in his contention that the effect of the first three sections of chapter 100, Laws of 1937, p. 406, is to amend the constitution. Article 23 of that instrument provides that it can only be amended by a two-thirds vote of both branches of the legislature, subsequently followed and confirmed by a vote of the people.

While we are reluctant to thwart the wishes of the prosecuting attorneys who earnestly desire the proposed change, it is plainly our duty to hold that the legislature, acting alone, had no power to make it, and that the first three sections, at least, of chapter 100, Laws of 1937, p. 406, are inoperative and of no effect. It is unnecessary to quote from legal opinions to support this holding, nor is it likely that the duty devolving upon all concerned has been anywhere more clearly and forcibly pointed out than in the words of the great soldier and statesman who was chairman of the Constitutional Convention of 1787 and the first President of the United States. These words may be found in the farewell address published by Washington to his "Friends and Fellow-Citizens" on the 17th day of September, 1796:

"The basis of our political systems, is the right of the people to make and to alter their constitutions of government: *but the Constitution which at any time exists, till changed by an explicit and authentic act of the whole people, is sacredly obligatory upon all.*" (Italics ours.)

The order appealed from is reversed, and the trial court is directed to proceed in accordance with this opinion.

STEINERT, C. J., MAIN, HOLCOMB, BEALS, and GERAGHTY, JJ., concur.

MILLARD, J. (dissenting)—While I agree that the first three sections of chapter 100, Laws of 1937, p.

406, are invalid, I question the propriety of entertaining this appeal. Expediency should not be the test of the right of the attorney general, the legal adviser of the state officers, to challenge the validity of an act of the legislature.

The constitution provides that "The attorney general shall be the legal adviser of the state officers, . . ." Const., Art. III, § 21.

Assuming that the attorney general's department did not draft the bills for the 1937 session of the legislature, and that the legislature did not seek or receive advice from the attorney general's department respecting proposed laws, the attorney general was not thereby relieved of the duty incumbent on him, in view of the constitutional provision quoted above, to advise the governor as to the validity of the legislative acts submitted to the governor for approval. It should be conclusively presumed that the attorney general performed his constitutional duty. It follows that the attorney general may not now inconsistently urge in this court, the invalidity of an act which it will be presumed he advised the governor to approve as a valid act.

BLAKE, J. (dissenting)—I dissent. It seems to me that, read in the light of a cardinal rule of statutory construction, there is no violation of any constitutional mandate in this statute. The rule is that, when necessary to sustain the validity of a statute, an apparently mandatory word or phrase will be construed as permissive. When read in the light of this rule, the first clause of § 1 of the act, p. 406, would be as follows:

"The official title of the office of Prosecuting Attorney, and/or County Attorney, *may* hereafter be known and designated as District Attorney, . . ."

The constitution left the duties of the prosecuting attorney for legislative definition. Under legislative enactments, the duties devolving upon the prosecuting attorney are much broader in scope than indicated by the ordinary conception of the term, i. e., the prosecution of criminal cases. I see no violation of any constitutional principle in *permitting* the prosecuting attorney to use an appellation, such as district attorney, to indicate the broad scope of the duties devolving on him under various legislative enactments.