[No. 26700. *En Banc.* November 29, 1937.]

THE STATE OF WASHINGTON, on *the Relation of Harry H. Johnston, as Prosecuting Attorney for Pierce County, Respondent,* v. GUY MELTON *et al., as Board of County Commissioners for Pierce County, Appellants.*[1]

[1]Reported in 73 P. (2d) 1334.

380

*The Attorney General* and *R. G. Sharpe, Assistant,* for appellants.

*Harry H. Johnston* and *John E. Belcher,* for respondent.

ROBINSON, J.—On March 13, 1937, chapter 100, Laws of 1937, p. 406 (Rem. Rev. Stat. (Sup.), § 113-1 *et seq.*), became effective as an emergency act of the legislature. The act purported to change the official title of the office of prosecuting attorney to "district attorney," and provided for the appointment of "investigators" by the incumbents of that office in the various counties of the state. That portion of the act which provided for the change of name was declared unconstitutional in *State ex rel. Hamilton v. Troy,* 190 Wash. 483, 68 P. (2d) 413. In this appeal, the constitutionality of § 4, p. 406, of the act is questioned. This section reads as follows:

"Sec. 4. Each District Attorney shall appoint as many investigators as shall be necessary to properly administer the affairs of the office of District Attorney, and to enforce the law, and shall have the sole power of discharge of such investigators: *Provided, however,* That the number of such salaried investigators shall not, at any time, exceed three (3) in class A counties, two (2) in first and second class counties, and one (1) in all other counties. *Any and all investigators appointed by a District Attorney shall have the same authority as the sheriff of the county to make arrests anywhere in the county and to serve anywhere in the county, warrants, writs, subpoenaes in criminal cases, and all other processes in criminal cases issued by any superior court or justice court in the state,* but such investigators shall not be under the authority and direction of the sheriff, and shall only be under the authority and direction of the said District Attorney. Such investigators shall not be allowed to draw any fees of any character for serving legal process of any nature." (Italics ours.) (Rem. Rev. Stat. (Sup.), § 115-1.)

The prosecuting attorney of Pierce county, under the name "district attorney," instituted the present action against the county commissioners to obtain a writ of mandate. In his affidavit and complaint, the relator set up his official character, the enactment of chapter 100, p. 406, and its provisions, and alleged that, pursuant thereto, he had appointed an investigator and had requested the commissioners to appropriate sufficient funds to pay his salary and that of another investigator, whose appointment he had withheld because the commissioners had refused to make any appropriation whatever; and that, unless the court should order the commissioners to make an emergency appropriation for the balance of the year 1937, he would be unable to cope with increasing violations of law. It was further alleged that the reasonable compensation to be paid as salary to each of such investigators was $150 per month. The relator prayed for a writ of mandate requiring the commissioners to fix the reasonable compensation for such investigators, or, in the alternative, to show cause on a date certain why they refused to do so. An order of show cause was issued in which the commissioners were commanded

". . . to forthwith make an appropriation of sufficient funds to pay the services of said investigators for the district attorney at the rate of $150 each for the balance of 1937,"

or to show cause on a date therein fixed why they had not done so.

The commissioners promptly demurred, and their demurrer was overruled. They then answered, setting up that, prior to the passage of the act, they had appropriated $80 per month to pay an investigator employed by the relator, and that they had refused to make the requested appropriation for a number of reasons, and among them the following:

"(a) Because respondents believed and still believe that said chapter 100, Laws of 1937, and particularly section 4 thereof, is unconstitutional and void;"

A general demurrer was sustained to the answer, and, the defendant commissioners refusing to plead further, it was ordered, adjudged, and decreed that the writ of mandate issue as prayed for in the complaint.

After the cause came to this court on appeal, the decision in *State ex rel. Hamilton v. Troy, supra,* was announced, and the respondent was thereupon permitted to amend his pleadings by substituting the words "prosecuting attorney" for the words "district attorney" wherever they appear therein.

Section 5, Art. 11 of our constitution provides, in part, as follows:

"The legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys, and other county, township, or precinct and district officers, as public convenience may require, and shall prescribe their duties and fix their term of office. . . ."

This section was amended in 1924 (amendment 12). The amendment retains the language above quoted, and provides that the legislature may classify the counties and provide for the election, in certain classes of counties, of officers who shall exercise the powers and perform the duties of two or more officers.

In construing that portion of § 5 of Art. 11, above quoted, in *State ex rel. Egbert v. Blumberg,* 46 Wash. 270, 89 Pac. 708, the court said:

"This provision of the constitution is mandatory. Const., art. I, § 29. It is plain and unambiguous. It requires all county officers to be elected. *Nelson v. Troy,* 11 Wash. 435, 39 Pac. 974; *State ex rel. Griffith v. Newland,* 37 Wash. 428, 79 Pac. 983."

It was held in that case that § 4, chapter 133, Laws of 1903, p. 247, attempted to create the office of county fruit inspector and was unconstitutional and void, because it provided that the office should be filled by appointment instead of by election.

Section 4, p. 406, of the act involved in this case provides that the investigators shall be appointed by the prosecuting attorneys of the various counties. If, when appointed, they become, in fact and in law, county officers, the section must be held to be unconstitutional.

The investigators contemplated by the act under discussion are to be appointed by the prosecuting attorneys and are to work under their direction and be subject to their control. Their activities are restricted to the territorial limits of the respective counties in which they are appointed. This action concedes that their compensation is to be paid by the counties, since its sole object is to force the commissioners of Pierce county to make an appropriation for that purpose. They are to be engaged in the execution of those governmental powers which the constitution provides shall be exercised by and through the county governments. Whether they are classified as officers or deputy prosecutors, or whatever they are called, it is clear that they are *county* functionaries of some kind.

When classification is required, one, ordinarily, immediately resorts to accepted definitions. Thousands of definitions of office and officer may be found in "Words and Phrases," in law dictionaries, text books, and judicial opinions. Their very multiplicity renders them unsuitable for quotation. It will, perhaps, be sufficient to say that, considered generally, they fully warrant the following expression taken from the opinion of the supreme court of Ohio in the case of

*State ex rel. Armstrong v. Halliday,* 61 Ohio St. 171, 55 N. E. 175:

"The distinguishing characteristic of a public officer is, that the incumbent, in an independent capacity, is clothed with some part of the sovereignty of the State, to be exercised in the interest of the public as required by law."

This is but a paraphrase of what is said in the standard text, Mechem on Public Officers, at page 5. It is the central thought in the definitions collected by the author of the article on "Officers" in Corpus Juris. 46 C. J. 924. This author, however, makes the following observation, with which we are in complete accord:

"Because of the variety of meanings or shades of meaning in which the terms 'office' and 'officer' may be employed, in determining whether or not a given employment is an office within the meaning of a particular statute or other written law, each case must be determined by a consideration of the particular facts and circumstances involved, and of the intention and subject matter of the enactment. The nature of the duties, the particular method in which they are to be performed, the end to be attained, the depositary of the power conferred, and the whole surroundings, must all be considered when the question as to whether a position is a public office or not is to be solved."

It is contended that, since it is expressly provided that the investigators are to act under the authority and direction of the prosecuting attorney, they may properly be classified as deputy prosecuting attorneys. But Rem. Rev. Stat., § 115 [P. C. § 1785], provides that deputy prosecuting attorneys shall have the same qualifications as the prosecuting attorneys themselves, and that they can only be appointed by and with the consent of the county commissioners. Furthermore, the principal powers given to the investigators and which sharply distinguish them from mere employees,

are powers which the prosecuting attorneys do not themselves possess. For example, a prosecuting attorney has no special power to make arrests. It would, therefore, obviously be impossible for anyone to make an arrest as his deputy. An investigator, in making an arrest, could only justify the act as one done in the exercise of his own independent authority and power as the legal incumbent of the office or position of investigator.

It is thus seen that the investigators, although appointed by the prosecuting attorneys and placed under their direction, are given the right to exercise independent powers. Are they clothed with some part of the sovereignty of the state? The act says:

"Any and all investigators appointed by a District Attorney shall have the same authority as the sheriff of the county to make arrests anywhere in the county and to serve anywhere in the county, warrants, writs, subpoenaes in criminal cases, and all other processes in criminal cases issued by any superior court or justice court in the state, but such investigators shall not be under the authority and direction of the sheriff. . . ."

This is a definite and express grant of official power. The investigators are expressly granted, as to arrests and the service of warrants and all other criminal process, *"the same authority as the sheriff of the county."* Furthermore, the powers thus granted are powers which the people of the state expressly provided in the constitution should be executed only by persons elected by themselves. The people are the source of all governmental power, and, in setting up a constitutional government, they provided that certain of their powers should be exercised through county governments, governments close to the people; and they further provided, in § 5 of Art. 11 of the constitution,

that the powers to be thus exercised through county governments should be exercised only through officials elected by themselves. In § 5 of Art. 11, they named the officers whom they then thought needful, county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys, and, being mindful that this is a world of continual development and change, they provided that the legislature might create other county offices as public convenience might require. In 1924, moved by reasons of economy, they provided, by the twelfth amendment, that, in certain classes of counties, one person might exercise the power and perform the duties of two or more offices; but these persons, as well as the incumbents of newly created offices, are as rigidly subject to election as the officers originally named in the constitution.

If it be held, as we think it clearly must be, that the power of arresting citizens and throwing them into jail is as sovereign in character as the power exercised by a fruit inspector, then the question before us has already been decided in *State ex rel. Egbert v. Blumberg*, 46 Wash. 270, 89 Pac. 708.

The respondent cites and relies upon a later decision in the case of *State ex rel. Lopas v. Shagren*, 91 Wash. 48, 157 Pac. 31, in which a law creating county game wardens was held constitutional. There can be no doubt that the rule of the *Blumberg* case would have been applied in the *Shagren* case, and the constitutional provision (§ 5, Art. 11) enforced, if the game wardens had been held to be county officers, for the court said:

"The controlling question is whether the members of the county game commission and the county game warden are county officers, under the game code, Laws of 1913, ch. 120, p. 356."

The court held that the words "county game warden" were merely used as a convenient method of description, and that such wardens were not, in law or in fact, county officers, because their functions did not relate to local matters, and particularly because they were not attached to specific counties but could be shifted about from county to county by the state game warden, by whom they were appointed and under whom they operated. It is clear that, in the *Lopas* case, the court would have reached the same result arrived at in the case of *State ex rel. Armstrong v. Halliday,* 61 Ohio St. 171, 55 N. E. 175, if it had found that the wardens were county officers. Speaking of the wardens created by the Ohio statute, the supreme court of Ohio said:

"These wardens are not only appointed for their respective counties, but their duties are limited to 'policing the territory' thereof. Hence, their duties being of a public nature and limited to their counties, they are, in every sense, as much county officers within the sphere of their duties, as are county sheriffs; and are, therefore, elective and not appointive officers."

Having thus determined the "controlling question," the court declared the act unconstitutional and void as being violative of § 1, Art. X of the constitution of Ohio, which, like our § 5, Art. 11, requires that all county officers shall be elected.

The *Halliday* case was decided in 1899. In 1914, the same court had occasion to again enforce the constitutional provision. In 1913, the general assembly of Ohio passed an act creating county budget commissions. The commissioners were not elective officers, that is, as budget commissioners, and in certain counties consisted of the mayor of the largest municipality, the city solicitor of the same municipality, and the county auditor. In a case where the constitutionality of the

act was questioned, *State ex rel. Pogue v. Groom,* 91 Ohio St. 1, 109 N. E. 477, the court said:

"The character of a public office is determined by the nature of the public service to be performed in connection with the territorial limits of the authority to act in an official capacity. The service performed by this commission is performed for the whole county and each part thereof, regardless of the lesser political subdivisions. This amendment very properly designates it as 'the budget commission of each county.' It is clear, therefore, that whoever is lawfully authorized to perform this public service for the county at large is a county officer, . . .

"Section 1 of Article X of the Constitution gives to the electors of a county the right to say who shall administer its local affairs, and any attempt by the legislature to clothe an individual not elected by a constitutional majority of the electors of the county with such authority would be a clear invasion of this constitutional right."

Hitherto, the discussion has been wholly confined to cases where the office under consideration was one not named in the constitution. The office of sheriff is a constitutional office. In naming the county officers in § 5, Article 11 of the constitution, the people intended that those officers should exercise the powers and perform the duties then recognized as appertaining to the respective offices which they were to hold. This thought is well expressed in an early Wisconsin case, *State ex rel. Kennedy v. Brunst,* 26 Wis. 412, 7 Am. Rep. 84:

"Now, it is quite true that the constitution nowhere defines what powers, rights and duties shall attach or belong to the office of sheriff. But there can be no doubt that the framers of the constitution had reference to the office with those generally recognized legal duties and functions belonging to it in this country, and in the territory, when the constitution was adopted."

The decision rendered in that case is sufficiently indicated by the first paragraph of the syllabus of the court, which reads as follows:

"Under our state constitution (which provides for the election of sheriffs by the electors of the county), the legislature cannot transfer to other officers, elected by the board of supervisors, important powers and functions which from time immemorial have belonged to the office of sheriff."

The act under construction expressly provides that, in each county of the state, important powers and functions, which belonged to the sheriff at the time our constitution was adopted and "from time immemorial," may be exercised by persons not elected by the people but appointed by the prosecuting attorney. If the legislature has the power to do that, it can, by a similar law, provide that some other official may appoint persons to operate the county jail. It could also provide that the sheriff should appoint persons with "the same authority as" the prosecuting attorney to prosecute criminals "anywhere in the county," and such enactments might be multiplied until a condition was brought about where the greater part of the governmental functions of the county would be executed by appointees. This cannot be done. The people have the constitutional right to elect the persons who shall perform the county governmental functions.

Lest it should be thought that the Wisconsin case just referred to is too old (1870) to be considered persuasive authority in these modern days, we also refer to *Ex parte Corliss*, 16 N. D. 470, 114 N. W. 962. In 1907, the legislature of North Dakota passed an act providing an enforcement commissioner, with power to appoint deputies who should have the common law and statutory powers of sheriffs in their respective counties with respect to the enforcement of the laws of the

state against the manufacture and sale of intoxicating liquors; these powers to be exercised at their discretion and in cases where it was thought that the incumbent sheriffs were not properly performing their duties. The law was held to be violative of that provision of the state constitution in which the people reserved the right to elect their county officers. The court said, in part:

"We take it to be a self-evident proposition that if the legislative assembly had the power to pass the act in question, then they had the power to go further and provide that such special enforcement officers should have the right to permanently displace the said county officers. Not only this, but they had the power to go still further and provide for the appointment of special officers by the central authority to perform all duties pertaining to the enforcement of all criminal laws in lieu of the regularly elected county officers provided for in the constitution, and thus frustrate to this extent the evident purpose of the framers of the constitution in providing for the election by the people in each county of officers for the performance of such public functions. . . . The governor, attorney general, and the judges are no more constitutional officers than are state's attorneys and sheriffs. It seems too obvious for discussion that the framers of the constitution, in providing for the election of these officers by the people, thereby reserved unto themselves the right to have the inherent functions theretofore pertaining to said offices discharged only by persons elected as therein provided. The naming of these officers amounted to an implied restriction upon legislative authority to create other and appointive officers for the discharge of such functions. If this is not true, then of what avail are the provisions of the constitution above referred to? If these constitutional offices can be stripped of a portion of the inherent functions thereof, they can be stripped of all such functions, and the same can be vested in newly created appointive officers, and the will of the framers of the constitution thereby thwarted."

Answering an argument identical with one much insisted upon in the argument in the case at bar, the court said:

"Section 173 of our constitution is relied upon as upholding this statute. This section, after enumerating the county officers and prescribing that they shall be elected by the electors of the county, further provides that their duties shall be prescribed by law; and it is argued that under the power to prescribe such duties the legislative assembly may take them away, or a portion thereof, and confer them upon other officers not elected by the people, just as is attempted to be done by the act in question. Such argument, carried to its logical and inevitable result, would lead to the monstrous doctrine that the constitution means nothing, and, notwithstanding its plain provisions, the legislative assembly may provide that the duties pertaining to all these offices shall be discharged by officers appointed in some manner prescribed by them."

See, also, *Trapp v. Cook Const. Co.*, 24 Okla. 850, 105 Pac. 667; *People ex rel. Wood v. Draper*, 15 N. Y. 532.

■ Finally, it is strongly urged in support of this appeal that, under the system of government existing in this state, our prosecuting attorneys exercise judicial powers of the greatest importance, since they exercise, in their respective counties, powers which the founders of the Federal government thought proper to be entrusted only to grand juries. It is said that to add to these already extensive judicial powers such executive powers as are, in effect, sought to be conferred by §§ 4 and 5 of chapter 100, Laws of 1937, pp. 406, 407, is to provide these officers with a combination of power which the over-zealous among them are apt to abuse, to the great disadvantage of their fellow citizens.

At first blush, this argument appears to be directed solely to the policy of the act, and with the policy of legislation the courts, of course, have no rightful con-

cern. But the argument has more in it than that. James Madison said, in the 47th number of The Federalist:

"The accumulation of all powers, legislative, executive, and judicial, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny."

To keep these powers as separate as humanly possible was the studied effort and dominant purpose of the framers of each and every one of our American constitutions, both state and Federal. This court has said, in *In re Bruen*, 102 Wash. 472, 172 Pac. 1152, that the courts have ever been alert and resolute to keep the legislative, executive, and judicial functions carefully separated, and that to this is due the steady equilibrium of our governmental system; and, while we might not declare § 4 of the act unconstitutional for this reason alone, it is one of the reasons which impels us to do so.

The judgment appealed from is reversed, and the action ordered dismissed.

STEINERT, C. J., BEALS, MAIN, HOLCOMB, and MILLARD, JJ., concur.

GERAGHTY, J. (concurring in the result)—While I think the judgment of the trial court should be reversed and, therefore, concur in the result of the opinion, I am unable to subscribe to the view that the portion of chapter 100 of the 1937 Session Laws, p. 406 (Rem. Rev. Stat. (Sup.), § 113-1 *et seq.*), authorizing the employment of investigators by prosecuting attorneys, is wholly unconstitutional.

First: The judgment should be reversed, because there is nothing in the act giving the prosecuting attorneys or the courts authority to fix the compensa-

tion of the investigators. They are to be members of the staff of the prosecuting attorneys and, as such, their compensation must be fixed by the boards of county commissioners in the same manner as the salaries of other assistants and employees are fixed.

It is also to be assumed, in the absence of any controlling language in the act to the contrary, that the legislature did not intend to repeal any of the provisions of the budget law or the other statutes prescribing an orderly system of county government, and that the commissioners are not required to provide for payment of the salaries of the investigators in advance of a budget provision therefor.

Second: Whether or not it is within legislative competence to vest the investigators with authority to make arrests, is not before the court now. Issue on that question can be made when the investigators assume exercise of the power.

As I read the law, the authority given to make arrests is but an incidental function of the investigators. The appointment of investigators is authorized by prosecuting attorneys to assist them in the enforcement of the law. They are to be employees of the prosecuting attorneys' offices to perform the duties assigned to them. Even though it be incompetent for the legislature to clothe the investigators with power to make arrests, there remains, manifestly, other duties to be performed, as against which no valid legal objection on constitutional grounds can be urged.

BLAKE, J., concurs with GERAGHTY, J.