**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 14, 2023

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 14, 2023

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| ROBERT SNAZA, in his official capacity as Sheriff of Lewis County, Washington; SEAN SWOPE, in his official capacity as District 1 Commissioner of Lewis County, Washington; LINDSEY POLLOCK, in her official capacity as District 2 Commissioner of Lewis County, Washington; GARY STAMPER, in his official capacity as District 3 Commissioner and Chair of the Board of County Commissioners for Lewis County, Washington; JOSEPH HELM, in his official capacity as Sheriff of Columbia County, Washington; RYAN RUNDELL, in his official capacity as District 1 Commissioner and Chair of the Board of County Commissioners for Columbia County, Washington; MARTY HALL, in his official capacity as District 2 Commissioner of Columbia County, Washington; CHARLES AMAAREIN, in his official capacity as District 3 Commissioner of Columbia County, Washington; RAYMOND MAYCUMBER, in his official capacity as Sheriff of Ferry County, Washington; DEREK GIANUKAKIS, in his official capacity as District 1 Commissioner of Ferry County, Washington; NATHAN DAVIS, in his official capacity as District 2 Commissioner and Chair of the Board of County Commissioners for Ferry County, Washington; MICHAEL HEATH, in his | No. 101375-2<br><br>En Banc<br><br>Filed: <u>September 14, 2023</u> |

*Snaza v. State*, No. 101375-2

official capacity as District 3 Commissioner of )
Ferry County, Washington; DREW HYER, in )
his official capacity as Sheriff of Garfield )
County, Washington; JIM NELSON, in his )
official capacity as District 1 Commissioner of )
Garfield County, Washington; LARRY )
LEDGERWOOD, in his official capacity as )
District 2 Commissioner of Garfield County, )
Washington; JUSTIN DIXON, in his official )
capacity as District 3 Commissioner and Chair )
of the Board of County Commissioners for )
Garfield County, Washington; TOM JONES, in )
his official capacity as Sheriff of Grant County, )
Washington; DANNY STONE, in his official )
capacity as District 1 Commissioner of Grant )
County, Washington; ROB JONES, in his )
official capacity as District 2 Commissioner of )
Grant County, Washington; CINDY CARTER, )
in her official capacity as District 3 )
Commissioner and Chair of the Board of )
County Commissioners for Grant County, )
Washington; DAVID S. BROWN, in his )
official capacity as Sheriff of Skamania County, )
Washington; RICHARD MAHAR, in his )
official capacity as District 1 Commissioner of )
Skamania County, Washington; TOM )
LANNEN, in his official capacity as District 2 )
Commissioner and Chair of the Board of )
County Commissioners for Skamania County, )
Washington; BOB HAMLIN, in his official )
capacity as District 3 Commissioner of )
Skamania County, Washington; OZZIE )
KNEZOVICH, in his official capacity as )
Sheriff of Spokane County, Washington; )
JOSH KERNS, in his official capacity as )
District 1 Commissioner of Spokane County, )
Washington; MARY KUNEY, in her official )
capacity as District 2 Commissioner of Spokane )
County, Washington; AL FRENCH, in his )
official capacity as District 3 Commissioner of )

2

*Snaza v. State*, No. 101375-2

| | |
|---|---|
| Spokane County, Washington, | ) |
| | ) |
| Respondents, | ) |
| | ) |
| v. | ) |
| | ) |
| STATE OF WASHINGTON, | ) |
| | ) |
| Appellant. | ) |
| | ) |

JOHNSON, J.—This case concerns article XI, section 5 of the Washington Constitution and asks us to decide the constitutionality of RCW 10.116.030(3)(a), which requires that sheriffs of noncharter counties receive authorization from the chair of the board of county commissioners prior to deploying tear gas[1] in response to a riot. The trial court, on summary judgment, held the statute violates article XI, section 5 of the Washington Constitution by interfering with the sheriff's core functions. We accepted direct review of the trial court's decision and affirm.

FACTS AND PROCEDURAL HISTORY

Following waves of protests across the state and country, calling for racial justice and reform of police practices, the Washington Legislature enacted several statutes in 2021 establishing requirements for tactics and equipment used by peace

---

[1] "'Tear gas' means chloroacetophenone (CN), O-chlorobenzylidene malononitrile (CS), and any similar chemical irritant dispersed in the air for the purpose of producing temporary physical discomfort or permanent injury, except 'tear gas' does not include oleoresin capsicum (OC)." RCW 10.116.030(4)(d). This statute does not apply to OC, commonly known as pepper spray.

3

*Snaza v. State*, No. 101375-2

officers. LAWS OF 2021, ch. 320 (codified at ch. 10.116 RCW). Relevant here is

RCW 10.116.030, which restricts the use of tear gas as a tactic to suppress riots.

RCW 10.116.030(1) provides tear gas may not be used "unless necessary to

alleviate a present risk of serious harm posed by a: (a) Riot; (b) barricaded subject;

or (c) hostage situation." Subsection (2) imposes specific prerequisites to using tear

gas as authorized under subsection (1). For instance, prior to deploying this tactic,

law enforcement must exhaust alternatives to the use of tear gas, obtain

authorization from a supervising officer, announce to the subjects the intent to use

tear gas, and allow sufficient time and space for the subjects to comply with law

enforcement's directives. RCW 10.116.030(2)(a)-(d).

In addition to these limits on the use of tear gas, law enforcement must

comply with RCW 10.116.030(3), which provides:

> In the case of a riot outside of a correctional, jail, or detention facility,
> the officer or employee may use tear gas only after: *(a) Receiving
> authorization from the highest elected official of the jurisdiction in
> which the tear gas is to be used*, and (b) meeting the requirements of
> subsection (2) of this section.

(Emphasis added.) In noncharter counties, "highest elected official" means "the

chair of the county legislative authority." RCW 10.116.030(4)(b). In this case, the

highest elected official is the chair of the board of county commissioners.

The respondents (collectively Sheriffs) and county commissioners of seven

noncharter counties initiated this action against the State, challenging two

4

*Snaza v. State*, No. 101375-2

provisions of RCW 10.116.030 as unconstitutional. The Sheriffs challenged

provision RCW 10.116.030(3)(a), which requires that county sheriffs obtain

authorization from the "highest elected official" of the county prior to deploying

tear gas to quell a riot outside of a jail, correctional, or detention facility. They

allege RCW 10.116.030(3)(a) is unconstitutional as applied to sheriffs of

noncharter counties and argue that the statute violates the constitutional separation

of powers doctrine based on article XI, section 5 of the Washington Constitution

by interfering with core functions of the county sheriff. *See State v. Rice*, 174

Wn.2d 884, 905, 279 P.3d 849 (2012) (discussing violation of article XI, section 5

and violation of separation of powers simultaneously). The Sheriffs and county

commissioners also challenged RCW 10.116.030(3)(a) and (4)(b), arguing the

statute impermissibly vests singular decision-making authority in the chair of the

board rather than in the commissioners as a legislative body.

The State and the Sheriffs and county commissioners filed cross motions for

summary judgment. The trial court granted the Sheriffs' motion on RCW

10.116.030(3)(a), holding the statute violates article XI, section 5 of the

Washington Constitution by interfering with a core function of the sheriff.

Specifically, it interferes with the sheriff's core function of quelling riots by

delegating the discretionary decision to use tear gas to quell a riot to another

official. The trial court granted the State's motion regarding the power of the chair

5

*Snaza v. State*, No. 101375-2

of the board to act alone, holding the statute did not intrude on the powers of the county commissioners.[2]

The State, seeking reversal, filed a direct appeal of the trial court's ruling that RCW 10.116.030(3)(a) violates article XI, section 5.[3] The Sheriffs ask this court to affirm the trial court's decision granting summary judgment by holding RCW 10.116.030(3)(a) unconstitutional as applied to sheriffs of noncharter counties.

ANALYSIS

Article XI, section 5 of the Washington Constitution provides in relevant part, "The legislature, by general and uniform laws, shall provide for the election in the several counties of . . . sheriffs, . . . and *shall prescribe their duties . . . .*" (Emphasis added.) The office of sheriff is a constitutional office, and the duties of the county sheriff are defined by statute. *See* WASH. CONST. art. XI, § 5. And "'[t]he legislature's power to enact a statute is unrestrained except where, either expressly or by fair inference, it is prohibited by the state and federal constitutions.'" *Wash. State Farm Bureau Fed'n v. Gregoire*, 162 Wn.2d 284, 300-

---

[2] No cross appeal of the ruling in favor of the State regarding the county commissioners was filed. The county commissioners are not party to this appeal.
[3] The American Civil Liberties Union of Washington filed an amicus curiae brief in support of the State.

6

*Snaza v. State*, No. 101375-2

01, 174 P.3d 1142 (2007) (quoting *State ex rel. Citizens Against Tolls (CAT) v. Murphy*, 151 Wn.2d 226, 248, 88 P.3d 375 (2004)).

Starting with *State ex rel. Johnston v. Melton*, our cases analyzing article XI, section 5 have established a restriction on the legislature's power when statutorily defining the duties of the constitutional offices. 192 Wash. 379, 73 P.2d 1334 (1937). In *Melton*, we concluded, "'The naming of these officers amounted to an implied restriction upon legislative authority to create other and appointive officers for the discharge of such functions.'" 192 Wash. at 390 (quoting *Ex parte Corliss*, 16 N.D. 470, 114 N.W. 962, 964 (1907)). In *Melton*, the legislature enacted a statute that permitted the county prosecutor's office to appoint a special investigator. The statute expressly granted to the special investigator several of the powers and duties held by the county sheriff, including granting the investigator "'the same authority as the sheriff of the county to make arrests anywhere in the county and to serve anywhere in the county, warrants, writs, subpoenaes in criminal cases, and all other processes in criminal cases.'" *Melton*, 192 Wash. at 380 (quoting LAWS OF 1937, ch. 100, § 4, at 406-07). These investigators were solely "'under the authority and direction'" of the prosecuting attorney. *Melton*, 192 Wash. at 380 (quoting LAWS OF 1937, ch. 100, § 4, at 406-07).

Guided by the purpose of this constitutional provision, we held the statute violated article XI, section 5. We explained the statute granted "'inherent

*Snaza v. State*, No. 101375-2

functions'" of a constitutional officer to "persons not elected by the people but appointed by the prosecuting attorney." *Melton*, 192 Wash. at 390 (quoting *Corliss*, 114 N.W. at 964), 389. We stated the statute would undermine the people's "constitutional right to elect the persons who shall perform the county governmental functions." *Melton*, 192 Wash. at 389.

Since *Melton*, other cases have interpreted this limitation to mean the legislature "is free to establish statutory duties that do not interfere with core . . . functions" of the county office. *Rice*, 174 Wn.2d at 905; *see Burrowes v. Killian*, 195 Wn.2d 350, 358, 459 P.3d 1082 (2020); *State ex rel. Banks v. Drummond*, 187 Wn.2d 157, 385 P.3d 769 (2016). Therefore, while the legislature holds plenary authority to define the duties of the county sheriff, article XI, section 5 prohibits the legislature from interfering with the core functions once those duties are defined or are otherwise inherently a function of a specific office.

In *Rice,* we interpreted RCW 9.94A.835, which provided, "'The prosecuting attorney *shall* file a special allegation of sexual motivation in every criminal case'" where sufficient admissible evidence would support such a finding. 174 Wn.2d at 893 (emphasis added) (quoting RCW 9.94A.835(1)). We concluded the statutory language had to be read as directory rather mandatory to avoid an unconstitutional construction of the statute. The prosecutor's office, like the sheriff's office, is a constitutional office under article XI, section 5. In our analysis, we noted that

*Snaza v. State*, No. 101375-2

reading the statute as mandatory would violate article XI, section 5 by interfering with a core function of the prosecutor's office. We first concluded a prosecutor's broad charging discretion is a core function of their office. We recognized that a prosecuting attorney's "most fundamental role . . . is to decide whether to file . . . charges against an individual and, if so, which available charges to file," reasoning that "[w]ithout broad charging *discretion*, a prosecuting attorney would cease to be a 'prosecuting attorney' as intended by the state constitution." *Rice*, 174 Wn.2d at 901, 905 (emphasis added). We then held the legislature "cannot usurp" the prosecutor's fundamental and inherent charging discretion by mandating charging decisions. *Rice*, 174 Wn.2d at 890. This interference in the prosecutor's exercise of charging discretion would violate article XI, section 5 unless interpreted as discretionary.

Similarly, in *Drummond*, the board of county commissioners appointed outside counsel to furnish legal advice to the board on how to implement the Growth Management Act (GMA), ch. 36.70A RCW, over the objection of a willing and able county prosecutor. This court resolved the case on statutory grounds but commented on the constitutional implications under article XI, section 5. We noted that a core function of the county prosecutor is to serve as legal adviser to the county, and article XI, section 5 would be violated if the board was permitted to appoint counsel to fulfill this core function. Applying an analysis

9

*Snaza v. State*, No. 101375-2

similar to *Melton*, we emphasized the purpose of article XI, section 5 is to protect the people's right to elect their county officers. The people chose the county prosecutor to legally advise the county, and the board's appointing someone to carry out the fundamental duties of an elected officer "would unconstitutionally deny the electorate's right to choose who provides the services of an elected office." *Drummond*, 187 Wn.2d at 182.

More recently, in *Burrowes*, we concluded a local superior court rule directly conflicted with the legislatively defined role of the county clerk. The court rule required county clerks "'keep and maintain paper files for all cases and file types.'" *Burrowes*, 195 Wn.2d at 362. Under the court rule, the county clerk was prohibited from paperless recordkeeping unless approved by a judge. We explained that article XI, section 5 established the office of county clerk and that the task of defining the county clerk's duties belongs to the legislature. And the legislature, through statute, made the county clerk responsible for safekeeping court records and authorized the county clerk's inherent discretion in choosing how to maintain those records. *Burrowes*, 195 Wn.2d at 363 (citing RCW 36.23.065 (allowing the county clerk to maintain documents in electronic form)). By ordering that the county clerk maintain paper files, the judges usurped the clerk's statutorily prescribed discretion in carrying out their duty of maintaining court records. *Burrowes*, 195 Wn.2d at 362 ("In effect, the judges have taken away the county

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

clerks' independent *discretion and authority* and given it to themselves."

(emphasis added)).

Here, the Sheriffs, as did the trial court, rely on *Melton*, *Rice*, *Drummond*,

and *Burrowes* to argue the tear gas statute violates article XI, section 5 by

interfering with the sheriff's core function of quelling riots. They argue this

interference is unconstitutional because it grants to the chair of the board of

commissioners the sheriff's authority to quell riots and it "detaches and transfers"

or usurps the sheriff's discretionary authority to decide the manner in which a riot

should be quelled. Br. of Resp'ts at 37.

The State counters the tear gas statute does not interfere with a core function

of riot suppression. The State argues the power and duty to quell a riot is not

granted to the chair of the board simply by requiring the chair to authorize the

sheriff's discretionary decision to deploy tear gas to suppress a riot. The State

reasons that the Sheriffs maintain the power and duty to quell riots by deciding

when to engage in riot suppression and what tactics to use to suppress a riot,

subject to certain limitations. And the limitation at issue here—requiring

authorization from the chair—does not interfere with the Sheriffs' ability to

suppress riots. The State contends that at most, the chair is granted the power to

exercise discretion in the type of force used to quell a riot.

*Snaza v. State*, No. 101375-2

In agreeing with the Sheriffs, the trial court stated that the cases "made it clear that the legislature may not transfer to other elected officers those powers and functions that have belonged to another [elected office] since before the ratification of the constitution." Clerk's Papers (CP) at 91-92. It concluded riot suppression is a core function of the sheriff's office, and "the right to determine" whether to use tear gas to suppress a riot is "an inherent function" of the sheriff's office. CP at 92. The trial court further reasoned that article XI, section 5 protects the people's right to choose, through their elections, the person responsible for determining what tactics or equipment to use to suppress a riot. And the people elected the sheriff, not the county commissioner, to make this decision.

While the line between a core function and a noncore function is not precisely drawn, we have described a core function as those powers and duties that are "fundamental," "inherent," and "central" to the county officer's role such that without these functions the county officer would cease to be as intended by the state constitution. *Drummond*, 187 Wn.2d at 170, 181 & n.13; *see Rice*, 174 Wn.2d at 905, 906. In prior cases, we have looked to "a given office's historical usage" to determine whether a particular function is a core function of a constitutional office. *Drummond*, 187 Wn.2d at 180 (comparing the historical and modern statutory duties of the prosecuting attorney to determine whether a duty was a core function); *Melton*, 192 Wash. at 388 ("In naming the county officers in § 5, Article

12

11 of the constitution, the people intended that those officers should exercise the powers and perform the duties *then recognized* as appertaining to the respective offices which they were to hold." (emphasis added)).

Consistent with the rule our cases establish, we conclude quelling riots is a core function of the sheriff's office. We emphasize discretionary use of lawful force in riot suppression is a core function of the sheriff's office. This conclusion necessarily follows and is consistent with how our cases determine the nature of an office's authority.

As we have stated, the county sheriff has been responsible for quelling riots since before the ratification of our state constitution. RCW 36.28.010(2), (6); LAWS OF 1891, ch. 45, § 1; LAWS OF 1854, § 4, at 434. This power and function has "belonged to the sheriff at the time our constitution was adopted, and 'from time immemorial.'" *Melton*, 192 Wash. at 389.

In exercising their duty to quiet and suppress all riots, the sheriff has historically had the discretionary authority to "call to their aid such persons, or power of their county[,] as they may deem necessary." RCW 36.28.010(6); *see* LAWS OF 1891, ch. 45, § 1; LAWS OF 1854, § 4, at 434. By its plain terms, the statutory duty to suppress riots grants the sheriff the discretion in how they choose

the lawful means to suppress the riot by authorizing the sheriff's exercise of discretion to call for reinforcements if necessary.[4]

Further, statutes that authorize peace officers to use force in the course of their duties naturally require that the officer exercise discretion in determining what use of force is necessary given the circumstances existing at the time a decision must be made. For instance, in 1975, the legislature enacted a "use of force" statute, outlining when use of force is lawful. It provides that use of force is lawful when "necessarily used" by a public officer in the performance of their legal duty. RCW 9A.16.020(1) (establishing criminal liability protections). "'Necessary' means that no reasonably effective alternative to the use of force appeared to exist and that the amount of force used was reasonable to effect the lawful purpose intended." RCW 9A.16.010(1); *see also* RCW 9A.16.040(1)(c)(iv) ("Homicide or the use of deadly force is justifiable . . . [w]hen necessarily used by a peace officer meeting the good faith standard of this section . . . [t]o lawfully suppress a riot if the actor or another participant is armed with a deadly weapon."). Peace officers logically must exercise discretion in determining when use of force is "necessary" and what amount of force is "reasonable."

---

[4] The use of tear gas in suppressing riots remains a legal option although the parties seem to agree that the legislature could ban its use, as is done with chokeholds. RCW 10.116.020(1).

*Snaza v. State*, No. 101375-2

The more recently enacted statute outlines the circumstances under which law enforcement may lawfully use physical force and deadly force. RCW 10.120.020 (establishing civil standard for use of force). It provides a peace officer may use physical force "to the extent necessary" to fulfill particular duties outlined in the statute. RCW 10.120.020(1). Similarly, it states a peace officer may use deadly force "only when necessary to protect against an immediate threat of serious physical injury or death to the officer or another person." RCW 10.120.020(2). "Necessary" means that

> under the totality of the circumstances, a reasonably effective alternative to the use of physical force or deadly force does not appear to exist, and the type and amount of physical force or deadly force used is a reasonable and proportional response to effect the legal purpose intended or to protect against the threat posed to the officer or others.

RCW 10.120.010(5). The statute necessarily requires a peace officer exercise discretion to determine what type and amount of force is necessary, reasonable, and proportional while carrying out their duties.

Here, a peace officer may lawfully use tear gas when "necessary to alleviate a present risk of serious harm" posed by a riot and when certain requirements are satisfied. RCW 10.116.030(1), (2). Under this statute, the sheriff has discretionary authority to determine when tear gas is necessary to quell a riot. And a sheriff's discretion in determining what use of force is necessary to fulfill their duties based

15

*Snaza v. State*, No. 101375-2

on existing particular circumstances is fundamental to their office. This discretion in lawful use of force is a core function of the sheriff's office.

We must next determine whether the legislature, under RCW 10.116.030(3)(a), unconstitutionally interfered with this core function by requiring that the sheriff receive authorization from the chair of the board of county commissioners prior to using tear gas to suppress a riot.

The State asserts that under our case law an article XI, section 5 violation occurs only when there are "extreme intrusions into fundamental aspects of county officer powers, including where those powers were delegated to non-elected officers." State's Opening Br. at 29. And, the State argues, such an intrusion is not present here where the statute requires the sheriff receive authorization from another locally elected, executive, constitutional officer before deploying tear gas to suppress a riot. None of the cases cited support this claim, and agreeing with the State would require that we reinterpret article XI, section 5.

We have held that an article XI, section 5 violation occurs where a separate official is granted a core function of a county officer.

> When the voters choose an elected official, they necessarily choose who will be responsible for the duties of that office. It would be fruitless to delegate the selection of county officers to the voters if the duties of those officers could be freely delegated to officers *appointed by other government branches*.

*Drummond*, 187 Wn.2d at 179-80 (emphasis added); *Melton*, 192 Wash. at 390 ("'The naming of these officers amounted to an implied restriction upon legislative authority to *create other and appointive officers* for the discharge of such functions.'" (emphasis added) (quoting *Corliss*, 114 N.W. at 964)).

Further, in *Rice* and *Burrowes*, this court was concerned with the usurpation of a constitutional office's core function. In *Rice*, we concluded the legislature could not usurp the county prosecutor's charging discretion by mandating certain charging decisions. 174 Wn.2d at 905-06. And in *Burrowes*, we noted the superior court judges could not usurp the county clerk's discretion in how they maintained court records by requiring that the clerk receive judicial authorization to maintain a record in electronic form. 195 Wn.2d at 362 ("In effect, the judges have taken away the county clerks' independent discretion and authority and given it to themselves."). Here, under the statute, when a sheriff makes the discretionary determination that tear gas is necessary to alleviate a present risk of serious harm posed by a riot, they are required to, in effect, ask for permission from the chair of the board of commissioners before its use. Similar to the actions at issue in *Rice* and *Burrowes*, the delegation of this decision usurps the county sheriff's inherent and fundamental discretionary authority in determining the necessary and appropriate use of force in the course of their duties by delegating that

17

*Snaza v. State*, No. 101375-2

discretionary authority to another official outside the purview of the sheriff's office.

Under the State's interpretation of article XI, section 5, the legislature's responsibility to define the duties of a county office would include the ability to transfer to another those duties that are so inherent and central to the role that without them the county office would cease to be the office as intended by the constitution. Permitting the legislature to redefine a county office's core functions would dilute the office's position. Our cases establish that our state constitution does not allow this type of interference. *See Rice*, 174 Wn.2d 884 (concluding it would be unconstitutional for the legislature to enact a statute that limited the county prosecutor's core function of charging discretion). Agreeing with the State's position would require us to abandon the rule we have consistently applied.

The State further argues this delegation does not amount to an unconstitutional interference because it merely limits a sheriff's use of one tactic available for riot suppression. However, as our case law warns, if the sheriff's office can be stripped of a portion of its inherent use of force discretion, then it can be stripped of all such discretion "'and the will of the framers of the constitution thereby thwarted.'" *Melton*, 192 Wash. at 390 (quoting *Corliss*, 114 N.W. at 964). In *Rice*, we concluded, "Without broad charging discretion, a prosecuting attorney would cease to be a 'prosecuting attorney' as intended by the state constitution.

18

*Snaza v. State*, No. 101375-2

*This would be true even if some modicum of charging discretion remained.*" 174 Wn.2d at 905 (emphasis added). Additionally, in *Drummond*, we noted article XI, section 5 would be violated if the county board was permitted to appoint counsel to fulfill the core function of serving as the county's legal adviser, even where outside counsel was hired to provide legal advice in one area of law only: the implementation of the GMA. 187 Wn.2d 157. Our state constitution does not permit such an interference.

Finally, the State warns that "[t]o equate statutory limitations on the exercise of discretion with interference with a county officer's core functions would dramatically expand the understanding of 'core function[,'] and would seem to suggest that any limitation on the use of force by sheriffs in controlling riots is unconstitutional." State's Opening Br. at 26. Again, the State cites no case authority supporting this claim, which our cases expressly reject.

The article XI, section 5 violation occurs where the legislature delegates or transfers to another official the sheriff's authority to exercise discretion in deciding the necessary use of force to fulfill their duties. This is an unconstitutional interference in the sheriff's core functions, and therefore, the statute violates article XI, section 5.

We affirm the trial court and hold RCW 10.116.030(3)(a) is unconstitutional and violates article XI, section 5 of the Washington Constitution.

19

*Snaza v. State*, No. 101375-2

_____
Johnson, J.

WE CONCUR:

_____          _____

_____          _____
Madsen, J.

_____          _____
Owens, J.

_____          _____
Stephens, J.                                        Judge, J.P.T.

20

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Snaza v. State*, No. 101375-2
(Gordon McCloud, J., dissenting)

No. 101375-2

GORDON McCLOUD, J. (dissenting)—The Washington Constitution

places the power to "prescribe [the] duties" of county sheriffs in the hands of the

state legislature. WASH. CONST. art. XI, § 5 ("The legislature, by general and

uniform laws, shall provide for the election in the several counties of . . . sheriffs, .

. . and *shall prescribe their duties* . . . ." (emphasis added)).

But this court has ruled that the Washington Constitution places a limit on

the legislature's power to "prescribe" those "duties." The county officers named in

article XI, section 5—including county sheriffs—must retain their "core

functions"; the legislature cannot allocate such "core functions" to a different

official. *State ex rel. Johnston v. Melton*, 192 Wash. 379, 388, 73 P.2d 1334

(1937); *State v. Rice*, 174 Wn.2d 884, 905, 279 P.3d 849 (2012).

The question in this case is whether RCW 10.116.030(3)(a), which limits

sheriffs' use of tear gas,[1] falls within the legislature's broad, explicit power to

---

[1] "'Tear gas' means chloroacetophenone (CN), O-chlorobenzylidene malononitrile (CS), and any similar chemical irritant dispersed in the air for the purpose of producing temporary physical discomfort or permanent injury, except 'tear gas' does not include

1

*Snaza v. State*, No. 101375-2
(Gordon McCloud, J., dissenting)

"prescribe [the] duties" of county sheriffs or whether it instead exceeds that

constitutional grant of power by depriving sheriffs of a "core function." That new

statutory subsection requires all law enforcement officers—including sheriffs—to

"[r]eceiv[e] authorization from the highest elected official of the jurisdiction"

before using one chemical agent—tear gas—for one purpose—to suppress a riot.

RCW 10.116.030(3)(a).

RCW 10.116.030(3)(a) is a policy decision that balances the risks and

benefits to law enforcement, crowds, and the public at large, posed by use of one

chemical agent, by allowing its use but requiring one extra step of oversight. It is

the legislature's job, in general, to make such difficult policy decisions. It is the

legislature's job, in particular, to make such difficult policy decisions about the

scope of sheriffs' "duties."

The majority's only response is that this statutory subsection allocates a

"core function" of the sheriff's office to a different official. To figure out what

constitutes a "core function" of a county office, we look at the historical functions

and duties of that office and also determine if the function is "fundamental" to or

"inherent" in that office. *State ex rel. Banks v. Drummond*, 187 Wn.2d 157, 180,

---

oleoresin capisicum (OC)." RCW 10.116.030(4)(d). This statute does not apply to OC, commonly known as pepper spray.

2

*Snaza v. State*, No. 101375-2
(Gordon McCloud, J., dissenting)

385 P.3d 769 (2016); *Rice*, 174 Wn.2d at 906. As we demonstrate below, the

historical record shows that the office of county sheriff never included unfettered

discretion in the handling of riots, or unfettered discretion in the use of tear gas, as

a function of that office, much less a "fundamental" or "inherent" function. *Id.*

I therefore disagree with the majority's conclusion that RCW

10.116.030(3)(a), limiting sheriffs' use of tear gas in riot control, interferes with a

core function of the office of county sheriff. Instead, that statute falls within the

legislature's broad, explicit power to "prescribe [the] duties" of that office.

I therefore respectfully dissent.

ANALYSIS

I.    Article XI, section 5 of the Washington Constitution explicitly places the
      power to prescribe the duties of the sheriff in the hands of the legislature

Article XI, section 5 of our state constitution states:

> The legislature, by general and uniform laws, shall provide for the
> election in the several counties of boards of county commissioners,
> sheriffs, county clerks, treasurers, prosecuting attorneys and other
> county, township or precinct and district officers, as public
> convenience may require, *and shall prescribe their duties*, and fix
> their terms of office.

(Emphasis added.) This language has not been altered since our constitution

was ratified in 1889.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Article XI, section 5 thus explicitly requires the legislature to prescribe the duties of the named elected offices. For sheriffs, the legislature has defined the duties and requirements of the office in varying circumstances through different legislation. In particular, the legislature enacted chapter 36.28 RCW outlining the county sheriff's office and listing the sheriff's "general duties" in RCW 36.28.010. These "general duties" include the duty to "defend the county against those who, by riot or otherwise, endanger the public peace or safety" and to "keep and preserve the peace in their respective counties, and quiet and suppress all affrays, riots, unlawful assemblies and insurrections . . . ." RCW 36.28.010(2), (6).

II.     The legislature discharged its article XI, section 5 obligation to prescribe the duties of the sheriff, in part, by enacting RCW 10.116.030

The challenged statute in this case, RCW 10.116.030, like RCW 36.28.010, also does precisely what article XI, section 5 tells the legislature to do—"prescribe [the] duties" of the sheriffs. Having a statute do that is unremarkable.  RCW 36.28.010, first enacted in 1854, has always prescribed "general duties" of the sheriff's office.  In fact, if RCW 10.116.030(3)(a) had been enacted as an amendment to RCW 36.28.010's "general duties" provision, it might have been more obvious that the legislature was simply continuing to prescribe the powers

*Snaza v. State*, No. 101375-2
(Gordon McCloud, J., dissenting)

and duties of county sheriffs, but updating those duties in light of contemporary circumstances.

What the legislatures actually prescribed in RCW 10.116.030 is also unremarkable. It addresses use of a chemical agent that was not around at the time of the ratification of our state constitution or enactment of RCW 36.28.010.[2] It addresses that contemporary issue by describing when and how law enforcement may use tear gas to carry out its core functions of riot control and public safety.

The statute first states that tear gas may not be used "unless necessary to alleviate a present risk of serious harm posed" by a riot, barricaded subject, or hostage situation. RCW 10.116.030(1). The statute next says that before using tear gas, the law enforcement officer must "[e]xhaust alternatives," "[o]btain authorization to use tear gas from a supervising officer," "[a]nnounce . . . the intent to use tear gas," and "[a]llow sufficient time and space" for subjects to comply with the directive. RCW 10.116.030(2). The sheriffs do not challenge these provisions. The sheriffs challenge only one provision of RCW 10.116.030: the one that requires that (in addition to the limitations stated above) for a riot "outside of a

---

[2] Tear gas was first used in 1914—about 25 years after our constitution was ratified. Anna Feigenbaum, *100 Years of Tear Gas*, THE ATLANTIC (Aug. 16, 2014), https://www.theatlantic.com/international/archive/2014/08/100-years-of-tear-gas/378632/ [https://perma.cc/M5DV-FGSA].

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Snaza v. State*, No. 101375-2
(Gordon McCloud, J., dissenting)

correctional, jail, or detention facility," law enforcement must "receiv[e] authorization from the highest elected official of the jurisdiction in which the tear gas is to be used" before law enforcement can deploy the tear gas. RCW 10.116.030(3)(a).

III.    This court has interpreted article XI, section 5 as limiting the power of the legislature to prescribe the duties of county officers in one respect: the legislature cannot deprive such officers of their "core functions"

But the legislature's power to prescribe the duties of these county offices, including the duties of county sheriffs, is not unlimited. Our court has read an implicit limit into article XI, section 5's broad delegation of power to the legislature to prescribe duties: the legislature cannot deprive the listed county officers, including county sheriffs, of their "core functions."

We first recognized this implied limit in *Melton*. 192 Wash. 379. In *Melton*, the legislature had passed a law that permitted prosecutors to appoint "investigators." *Id.* at 380. But they weren't really investigators. These investigators had the "'same authority as the sheriff of the county to make arrests anywhere in the county and to serve anywhere in the county, warrants, writs, subpoenaes in criminal cases, and all other processes in criminal cases issued by any superior court or justice court in the state.'" *Id.*

*Snaza v. State*, No. 101375-2
(Gordon McCloud, J., dissenting)

(emphasis omitted) (quoting LAWS OF 1937, ch. 100, § 4, at 406). Our court held that this law violated the state constitution because the "'naming of [the] officers'" in article XI, section 5 "'amount[s] to an implied restriction upon legislative authority to create other and appointive officers for the discharge of such functions.'" *Id.* at 390 (quoting *Ex parte Corliss*, 16 N.D. 470, 475, 114 N.W. 962 (1907)). We determined that because the framers of our constitution provided for the election of these specific offices, those offices possessed certain "inherent functions" at the time of ratification, and such inherent functions could not be delegated to another official. *Id.* at 389-90.

As the majority details, we expanded on this doctrine in three seminal cases. In *Rice*, we addressed the constitutionality of a statute that the county prosecutor—a county "officer" listed in article XI, section 5, along with county sheriffs—characterized as requiring them to file a sentencing enhancement. 174 Wn.2d 884. The defense argued—and we agreed—that requiring a prosecutor to file any charge or enhancement would completely "usurp the inherent charging discretion of prosecuting attorneys" and that the charging discretion of a prosecutor is the "most fundamental role" of that office. *Id.* at 890, 901. The statute survived only because we interpreted it

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

differently than the parties did: we interpreted the legislature's directives about filing such enhancements as discretionary, not mandatory.

Then, in *Drummond*, we had to decide whether the board of commissioners violated article XI, section 5, by hiring outside counsel to advise the board on certain civil law issues. 187 Wn.2d 157. We held that the commissioners' decision to use outside counsel, rather than the county prosecutor, violated that constitutional provision because it usurped the prosecutor's fundamental and historical duty to act as "legal adviser" to the board. *Id.* at 161-62, 181.

Finally, in *Burrowes v. Killian*, we addressed whether superior court judges had the power to require the county clerk to maintain paper files (rather than only electronic ones). 195 Wn.2d 350, 459 P.3d 1082 (2020). We ruled that the clerk—another county officer listed in article XI, section 5—has a fundamental, historical duty to "maintain the superior court's records." *Id.* at 363. We concluded that the judges could not interfere with that implicit constitutional allocation of duties to the county clerk. *Id.* at 362-63.

These cases clarified that article XI, section 5 protects the "core functions" of the public officials named in that provision from the legislature

*Snaza v. State*, No. 101375-2
(Gordon McCloud, J., dissenting)

allocating their inherent functions to another office. *Rice*, 174 Wn.2d at 905.

The key question is how do we define a "core function"?

Our cases have looked at several different sources to determine what

constitutes a "core function" of an article XI, section 5 named office:

preexisting statutes describing the functions of such an office, case law

describing long recognized functions of the office, and historical functions

of the office. *Burrowes*, 195 Wn.2d at 361-62 (looking to statutes to

determine core function of county clerk); *Rice*, 174 Wn.2d at 903-04

(looking to case law to show "'long-recognized'" charging discretion of

prosecutors (quoting *State v. Lewis*, 115 Wn.2d 294, 299, 797 P.2d 1141

(1990)); *Melton*, 192 Wn.2d at 385 (core function clearly implicated because

statute delegated "'*same authority as the sheriff of the county*'" (quoting

Laws of 1937, ch. 100, § 4, at 406)); *Drummond*, 187 Wn.2d at 180 ("We

construe 'core functions' according to a given office's historical usage.").

The parties seem to acknowledge that this test has room for

development. Wash. Sup. Ct. oral argument, *Snaza v. State*, No. 101375-2

(May 11, 2023), at 6 min., 50 sec. (Justice Johnson suggesting the test to

determine core function seems to be, "we know it when we see it"), 7 min.,

15 sec. (State attempting to articulate a more clear test than "we know it

9

*Snaza v. State*, No. 101375-2
(Gordon McCloud, J., dissenting)

when we see it" for "core function"), 40 min., 14 sec. (Sheriffs agreeing "we need something more concrete" than current law to determine what is a "core function"), *video recording by* TVW, Washington State's Public Affairs Network, https://www.tvw.org/video/Washington-state-supreme-court-2023051144/?eventID=2023051144. But as discussed above, we already have some definite guideposts. We have already stated that a "core function" of a named county office is one that is "fundamental" to the office, "inherent" in the office, and part of the exercised duties of that office in the past, including at the time the Washington Constitution was ratified. *Rice*, 174 Wn.2d at 906; *Drummond*, 187 Wn.2d at 180.

IV.   RCW 10.116.030 does not delegate a "core function" of the sheriff's office to another official because riot control has always been limited by statute and use of tear gas has never been a "core function" of that office

The majority holds that it is a core function of the sheriff's office to quell a riot. I agree. The legislature has passed a statute saying it is the sheriff's duty to quell riots, the history of the office has always included the duty to keep the peace and quell riots, and the duty to quell riots is "inherent" to peace officers such as the sheriff. RCW 36.28.010(6) (sheriff "[s]hall . . . quiet and suppress all affrays, riots, unlawful assemblies and insurrections . . . .").

10

*Snaza v. State*, No. 101375-2
(Gordon McCloud, J., dissenting)

But the majority continues that it is a "core function" of the sheriff's office to use discretion in implementing any "lawful means" of force to quell a riot. Majority at 13-14. This is the premise on which the majority bases its conclusion that RCW 10.116.030(3)(a) exceeds the legislature's article XI, section 5 power.

The majority's premise is incorrect. In fact, historically, there was a statute on the books at the time of statehood that limited sheriffs' discretion in how to control riots. And there are statutes on the books now limiting the sheriffs' discretion in other ways. Because the premise on which the majority bases its conclusion is incorrect, its conclusion is also incorrect.

    A. *Neither the unfettered use of force in general nor use of tear gas in particular constitute historical or statutory functions of the sheriff's office*

As discussed above, we consider the "historical usage" of a county office to determine its core functions. *Melton*, 192 Wash. at 388 ("In naming the county officers in § 5, Article 11 of the constitution, the people intended that those officers should exercise the powers and perform the duties *then recognized* as appertaining to the respective offices which they were to hold." (emphasis added)); *Drummond*, 187 Wn.2d at 180 ("We construe 'core functions' according to a given office's historical usage."). This examination shows that the sheriff's office has never had

11

*Snaza v. State*, No. 101375-2
(Gordon McCloud, J., dissenting)

the unlimited ability to use force in general or tear gas in particular for anything, including riot control.[3]

In fact, before our constitution was even ratified, the legislature had limited the extent of force a sheriff could use during riot suppression. As far back as 1881, the legislature enacted a law that limited the sheriff's use of force when performing riot control and even gave decision-making authority about use of force to others in the executive and judicial branches.  It stated:

> If three or more persons shall be unlawfully, riotously or tumultuously assembled, any justice of the peace, sheriff, deputy sheriff, constable, or marshal of a city, or mayor or alderman thereof, shall go among the persons so assembled, or as near to them as possible, and shall command them in the name of the territory of Washington, immediately to disperse. If the persons so assembled do not immediately disperse, it shall be lawful for every such officer to command sufficient aid, and to seize, arrest and secure in custody all such persons; and if necessary, an armed force may be called out and shall obey the orders of any two of the magistrates or officers mentioned in this section, . . . .

CODE OF 1881, ch. 70, § 860, at 171.

This law limited the sheriff's ability to use immediate force: the sheriff first had to "command" the rioters "immediately to disperse" before using force. *Id.*

---

[3] Our precedent is not entirely clear about what period of history matters most, but some of those cases have examined historical practices and sources of law going back to the time of statehood. We therefore consider both the history at the time the Washington Constitution was ratified and more recent history concerning sheriff's office functions.

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Only then could the sheriff arrest the rioters. Additionally, the sheriff's power to quell a riot was not exclusive: the legislature also allocated this power to the "justice of the peace," the "mayor," and to other elected officers, and the legislature gave *all* of the named officers in that statute the power to call out an armed force, direct them, and arrest violators. *Id.* This law, which limited the sheriff's discretion about how to conduct riot control and diffused the power to conduct riot control to other executive and judicial officers, stayed on the books largely unchanged until 1975. LAWS OF 1854, §§ 64-65, at 87; LAWS OF 1873, §§ 73-74, at 197; CODE OF 1881, ch. 70, §§ 859-861, at 171-72; LAWS OF 1909, ch. 249, §§ 296-297, at 980-81; REM. REV. STAT. §§ 2548-2549.

An 1890 law also limited the sheriff's ability to conduct riot control. It stated that a city marshal during a riot "shall have the powers that are now or may hereafter be conferred upon sheriffs." HILL'S GEN. STAT. § 655, at 233 (citing CODE OF 1890, § 136). This law delegated the powers of the sheriff to the city marshal during a riot.

As these early statutes show, the legislature has never vested unlimited discretion in the sheriff's office to determine how to quell a riot. And, of course, they never mentioned anything about tear gas or other chemical agents.

*Snaza v. State*, No. 101375-2
(Gordon McCloud, J., dissenting)

Additionally, the use of tear gas has not *historically* been used by the sheriff's office to suppress riots. Tear gas was not even invented until about 25 years after our constitution was enacted. Anna Feigenbaum, *100 Years of Tear Gas*, THE ATLANTIC (Aug. 16, 2014) https://www.theatlantic.com/international/archive/2014/08/100-years-of-tear-gas/378632/ [https://perma.cc.M5DV-FGSA]. It is therefore indisputable that tear gas has never been a fundamental component of the sheriff's ability to quell a riot.

To be sure, as the majority points out, after 1975, the legislature passed new use of force laws that limit officers' ability to use force. The majority characterizes these statutes as granting the sheriff broad powers to use force whenever "necessary." But that's not what those statutes say. Those statutes actually continue to place specific limits on an officer's ability to use force. Majority at 14-16. For example, an officer must (if possible) use de-escalation tactics before using force, must use the least amount of physical force necessary, and must terminate the force as soon as the necessity for the force ends. RCW 10.120.020(3)(a)-(c).[4]

_____

[4] Even the sheriffs acknowledge that our constitution gives the legislature the power to limit law enforcement use of specific types of force. Wash. Sup. Ct. oral argument, *State v. Snaza*, No. 101375-2 (May 11, 2023), at 22 min., 30 sec. (Sheriffs acknowledge that the legislature could ban the use of tear gas outright), at 26 min., 10 sec. (Sheriffs acknowledge that the legislature can ban the use of chokeholds outright), *video recording by* TVW, Washington State's Public Affairs Network,

14

*Snaza v. State*, No. 101375-2
(Gordon McCloud, J., dissenting)

And the story is the same for sheriffs' other duties to keep the peace. The legislature limits the sheriffs' use of discretion even in the core function of arrest. Sheriffs generally possess broad discretion in deciding whom and when to arrest. RCW 36.28.010(1). But the legislature *mandates* that law enforcement—including sheriffs—make arrests in certain domestic violence situations. RCW 10.99.030(6)(a).

This history shows that sheriffs have never possessed unlimited discretion on when and how to use force to quell a riot, or even in when and how to discharge other fundamental, historical functions. There is simply no evidence in the historical or statutory record to show that sheriffs ever had unilateral power to decide everything about how to quell a riot or to decide the even narrower question about whether to use tear gas to quell a riot. In other words, there is no evidence in the state's historical or statutory record that unilateral decision-making about the efficacy of using tear gas to quell a riot constitutes a historical core function of the sheriff's office.

  *B. Tear gas is not "inherent" in or "fundamental" to the sheriff's office*

---

https://tvw.org/video/washington-state-supreme-court-2023051144/?eventID=2023051144.

15

*Snaza v. State*, No. 101375-2
(Gordon McCloud, J., dissenting)

Our case law also tells us to consider whether a function is "inherent" in or "fundamental" to the office to decide whether it is "core." In *Rice*, for example, we stated without even examining the historical record—probably because it was so obvious—that a prosecutor's charging discretion is "inherent" in that office and that "[w]ithout broad charging discretion, a prosecuting attorney would cease to be a 'prosecuting attorney.'" 174 Wn.2d at 905.

The majority reasons that the broad use of discretionary tactics to suppress a riot is "inherent" in the sheriff's office and that allocating the decision on whether to use a tactic—even a dangerous one that affects broad law-abiding swaths of the population—would usurp the sheriff's core function.

But using a dangerous tactic that affects broad parts of the law-abiding population affects not just riot control—it also affects public health and safety in general. And the sheriff's office is not the only one charged with the duty to protect the peace and dignity of the state of Washington. Other elected officers share that duty.

Making decisions that properly balance the need to control riots with the need to protect the health, safety, and peace of the entire population is extremely difficult. The decision-makers must consider the fact that tear gas can be an effective tool for crowd disbursement, but it is not always a necessary tool. Sheriffs

16

*Snaza v. State*, No. 101375-2
(Gordon McCloud, J., dissenting)

have other well-recognized tactics for riot control at their disposal. Jessica Moss,

*Tear Gas and the Politics of Protest Policing*, COUNCIL ON FOREIGN RELS. (Aug.

26, 2020) (employing "dialogue police," using signs, using third party negotiators,

community policing tactics), https://www.cfr.org/in-brief/tear-gas-and-politics-

protest-policing [https://perma.cc/2KNC-2PCQ]; Jennifer Brown et al., *Technology*

*Assessment: Tear Gas Safety and Usage Practices*, J. SCI. POL'Y & GOVERNANCE,

at 9-10 (Mar. 2021) (de-escalation tactics and targeted arrests),

https://www.sciencepolicyjournal.org/uploads/5/4/3/4/5434385/brown_etal_jspg_v

18.1.pdf [https://perma.cc/LU3G-WDKN].

In other words, having unilateral power to decide whether to use tear gas is

not so fundamental to the sheriff's ability to control a riot and to balance riot

control with public safety that the sheriff would "cease to be" the sheriff without it.

*Rice*, 174 Wn.2d at 905.

Further, the limits in RCW 10.116.030(3)(a) are minimal. The sheriff still

has broad power to make discretionary decisions about the best way to quell a riot.

This discretion includes the power to make the decision to use tear gas in the *first*

*instance*. The new statutory subsection mandates only that the sheriff must then get

approval from "the highest elected official of the jurisdiction in which the tear gas

is to be used." RCW 10.116.030(3)(a). But the statute does not completely replace

17

*Snaza v. State*, No. 101375-2
(Gordon McCloud, J., dissenting)

the sheriff's duties on riot control or tear gas use. This feature of RCW 10.116.030 distinguishes it from the statutes that impermissibly eliminate or delegate all of the county officer's discretion in a core function. *Melton*, 192 Wash. at 380 (investigators given the "same authority as the sheriff"); *Rice*, 174 Wn.2d at 890 (statute seemed to mandate use of sentence enhancement, without any discretion to decline to file); *Drummond*, 187 Wn.2d at 161 (delegated civil legal advising entirely to outside counsel); *Burrowes*, 195 Wn.2d at 362 (rule mandated county clerk to maintain paper files). Here, the statute does not strip the sheriff's office of its ability to make all of the other complicated and difficult discretionary decisions that occur when a sheriff is tasked with quelling a riot and does not even strip the sheriff's office of its ability to make an initial decision on using one tactic.

CONCLUSION

The sheriff's office has never had unfettered discretion to use any means it chose to suppress riots. The historical record shows that the legislature limited sheriffs' discretionary decisions about how to quell riots from the time of statehood. And, of course, the historical record shows that tear gas was not even available at the time of statehood. It necessarily follows that discretionary use of tear gas to suppress riots is not "fundamental" to or "inherent" in the office of sheriff.

18

*Snaza v. State*, No. 101375-2
(Gordon McCloud, J., dissenting)


RCW 10.116.030(3)(a) therefore falls comfortably within the legislature's

article XI, section 5 power to prescribe the duties of the office of sheriff. It does

not unconstitutionally infringe on a core function of that office.

For these reasons, I respectfully dissent.


_____
Gordon McCloud, J.

_____
González, C.J.

_____
Yu, J.

_____
Montoya-Lewis, J.